**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**OLUKAYODE D. OJO and**
**OLATUNBOSUN G. OJO,**

     **Plaintiffs,**

     **v.**

**MILROSE 179 HARRISON, LLC, and**
**EHRLICH, PETRIELLO, GUDIN, &**
**PLAZ,**

     **Defendants.**

Civ. No. 20-00949 (KM) (ESK)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

     The plaintiffs, Olukayode D. Ojo and Olatunbosun G. Ojo, rented an apartment owned by Milrose 179 Harrison, LLC. Disputes arose over the habitability of the apartment and the Ojos' refusal to pay rent. Milrose, though its counsel, Ehrlich, Petriello, Gudin, & Plaz, then initiated an action against the Ojos in New Jersey landlord-tenant court, resulting in the Ojos vacating the apartment. Now in this Court, the Ojos, proceeding *pro se*, have sued Milrose and Ehrlich for claims arising from the disputes and the state landlord-tenant case. Milrose and Ehrlich move to dismiss. (DE 17.)[1] For the following reasons, the motion to dismiss is **GRANTED IN PART and DENIED IN PART**.

---

[1]    Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Compl. = Complaint (DE 1)

    Mot. = Defendants' Brief in Support of their Motion to Dismiss (DE 17-5)

    Opp. = The Ojos' Brief in Opposition to Milrose and Ehrlich's Motion (DE 25)

    Lease = Lease Agreement (DE 4-1)

    Filing = Summary Dispossession Action Complaint (DE 4-3)

## I.   BACKGROUND

The allegations of the Complaint are assumed to be true for purposes of this motion. *See* Section II, *infra.*

Milrose owned an apartment building in New Jersey. (Compl. ¶ 7.) The Ojos signed a lease for a unit in that building in December 2017. (*Id.* ¶ 8.) Beginning in July 2019, Milrose failed to maintain the premises or correct a bed bug/vermin problem, and the Ojos repeatedly complained. (*Id.* ¶¶ 17–19.)

By December 2019, it became clear to the Ojos that Milrose would not respond, so they withheld rent for that month. (*Id.* ¶ 22.) In response, Milrose threatened to evict the Ojos, demanded rent exceeding the agreed-upon rent, and threatened to charge additional fees. (*Id.* ¶ 23.) Then, Milrose hired the Ehrlich law firm to initiate a summary dispossess action. (*Id.* ¶¶ 24–26.) The Ojos did not appear but instead paid the rent and vacated the premises, so the action was dismissed. (*Id.* ¶ 30; Filing at 1.)

The Ojos then sued Milrose and Ehrlich in this Court, asserting claims for (1) breach of contract, (2) wrongful ouster, (3) negligence in maintaining the apartment, (4) "refusal to repair the apartment" (a specific breach of contract), (5) conspiracy, (6) violations of the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o, and the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.*, and (7) violations of the Consumer Leasing Act ("CLA"), 15 U.S.C. §§ 1667 *et seq.*, and the New Jersey Truth-in-Renting Act ("NJTIRA"), N.J. Stat. Ann. § 46:8-43 *et seq.* (Compl. ¶¶ 32–64.) The parties are not of diverse citizenship, so the Ojos rely on federal-question and supplementary jurisdiction. (*Id.* ¶¶ 2, 4–6.) Milrose and Ehrlich move to dismiss.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible

on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III.   DISCUSSION

This case is a landlord-tenant dispute, in which state law claims predominate; I state for the guidance of these *pro se* plaintiffs that, absent an independent basis for federal-court jurisdiction, such claims would ordinarily be filed in state court. I therefore assess first whether the federal FDCPA and CLA claims, which would be the only source of federal jurisdiction, are plausibly alleged. (Sections III.A, III.B) Because one such federal claim (the FDCPA claim) is sufficiently alleged, I then proceed to analyze the state-law causes of action. (Section III.C)

### A.   FDCPA

The Ojos assert a claim under the FDCPA.[2]

"The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (en banc). "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (citation omitted).

---

[2]   The FDCPA is combined in Count 6 with a state law claim under the Consumer Fraud Act, which is discussed separately herein. *See* Section III.C.5, *infra.*

Defendants do not dispute elements (1) and (3). (Mot. at 7.) The Ojos are consumers. 15 U.S.C. § 1692a(3) (defining consumer as "any natural person obligated to pay any debt"). Unpaid rent is a debt. *Rodriguez v. Maharaj*, Civ. No. 20-04666, 2021 WL 508611, at *4 (D.N.J. Feb. 11, 2021) (collecting cases); *see* 15 U.S.C. § 1692a(5) (defining debt as "any obligation to pay money arising out of a transaction"). So the remaining issues are elements (2) and (4): whether Milrose and Ehrlich are "debt collectors," and whether the Ojos have adequately alleged a violation of a section of the FDCPA.

### 1. Debt Collector

Milrose is not a debt collector, but Ehrlich is.

"Debt collector" can mean any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Creditors," defined in part as those "to whom a debt is owed," *id.* § 1692a(4), are not considered "debt collectors." *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018). This is because the FDCPA is focused on "third party collection agents working for a debt owner— not on a debt owner seeking to collect debts for itself." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017). Accordingly, landlords, like Milrose, seeking to collect rent (a debt) owed directly to them from tenants are creditors, not debt collectors. *Rodriguez*, 2021 WL 508611, at *4. The FDCPA claim against Milrose will be dismissed.

Law firms acting on behalf of landlords, however, can qualify as debt collectors. *Id.* The Supreme Court has held that "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' [] consumer debts" on behalf of a client. *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). Reasoning from *Heintz*, the New Jersey Supreme Court held that lawyers representing landlords in summary dispossess actions are debt collectors. *Hodges v. Sasil Corp.*, 915 A.2d 1, 10 (N.J. 2007). The court explained that "the summary dispossess action is [] a powerful debt collection mechanism" and "designed to secure performance of

the rental obligation." *Id.* (citation omitted). I am not bound by *Hodges,* which is a state supreme court ruling on a question of federal law. *See Surrick v. Killion*, 449 F.3d 520, 535 (3d Cir. 2006). I find *Hodges* persuasive, however, and federal courts in this District have uniformly adopted the holding of *Hodges. Rodriguez*, 2021 WL 508611, at *4; *Livingstone v. Haddon Point Manager, LLC*, Civ. No. 19-13412, 2020 WL 902218, at *5 (D.N.J. Feb. 25, 2020); *Crenshaw v. Computex Info. Servs., Inc.*, Civ. No. 10-1493, 2011 WL 1640175, at *4–5 (D.N.J. Apr. 30, 2011).

Accordingly, I find that Ehrlich is adequately alleged to have acted as a debt collector when it represented Milrose in the summary dispossess action. Drawing inferences in the Ojos' favor, I can infer that summary dispossess actions are part of Ehrlich's practice, such that it "regularly" engages in that debt collection activity. 15 U.S.C. § 1692a(6); *Hodges*, 915 A.2d at 10. Thus, Ehrlich acted as a debt collector subject to the FDCPA.

### 2. FDCPA Violations

The Ojos must also allege that Ehrlich violated one or more of the prohibitions contained in the FDCPA. *Barbato*, 916 F.3d at 265. The Complaint is not as specific as it might be, but because the Ojos appear *pro se*, I construe it liberally and "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *see also Rodriguez*, 2021 WL 508611, at *5 (analyzing *pro se* complaint for FDCPA violations even when the complaint did not specify them). In that process, I am aided by the Ojos' brief, which identifies four claimed FDCPA violations. (Opp. at 7.) I address each in turn, and find that two of them may be plausibly inferred from the complaint.

### a. § 1692d

The Ojos allege that Ehrlich violated § 1692d, which provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Generally, a nonfrivolous lawsuit alone does not qualify as

harassing or abusive conduct. *Shaw v. Hayt, Hayt & Landau, LLC*, No. 20-cv-00115, 2021 WL 531961, at *9 (W.D. Pa. Feb. 12, 2021); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006); *see Gross v. Maitlin*, 519 F. App'x 749, 751 (3d Cir. 2013) (per curiam) ("Maitlin's court-authorized attempt to collect a judgment does not constitute harassment or abuse in violation of § 1692d."). Here, Ehrlich had a valid reason for bringing a summary dispossess action—the Ojos had stopped paying rent. There may have been defenses to the state action, though the Ojos did not pursue them. Be that as it may, I cannot say that an action to recover rent that concededly was not paid crosses the line to harassment, oppression, or abuse. Thus, the Ojos fail to state a § 1692d claim.

### b. § 1692e

The Ojos allege that Ehrlich violated § 1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The Ojos seem to allege that Ehrlich violated § 1692e by demanding, via the summary dispossess action, excess rent and extra fees. (*See* Compl. ¶¶ 23, 28; Opp. at 7.) A legal filing that misstates the amount owed can qualify as a false, deceptive, or misleading representation. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 175, 177 (3d Cir. 2015), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019); *see* § 1692e(2)(A) (prohibiting the "false representation of . . . [the] amount . . . of any debt").

A complaint that seeks fees not contemplated by a debtor's contract with the creditor may mispresent the amount owed for purposes of § 1692e. *See Kaymark*, 783 F.3d at 175 (foreclosure complaint that demanded attorney's fees calculated in a way contrary to the mortgage contract). Here, however, the Lease provided that late fees and attorney's fees could be charged along with overdue rent. (Lease at 5, 22.) As a result, there was no § 1692e violation when the summary dispossess filing sought those fees.

The demand for overdue rent presents a closer question. The summary dispossess action sought $1,946.88, a sum represented to be the Ojos' monthly rent payment that was due on December 1, 2019. (Filing at 2.) The Complaint alleges that the rent was $1,900, not $1,946.88, per month. (*See* Compl. ¶¶ 11, 23; Opp. at 3–4.)

Generally, when a communication sets forth a specific amount owed, and the debtor does not actually owe that amount, there may be a § 1692e violation, irrespective of the communicator's knowledge of falsity. *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014). Applying that principle, courts have held that when a law firm claims in a court filing that a tenant owes a certain amount of rent, but the amount is overstated, the tenant has a claim that the firm falsely represented the amount of a debt, in violation of § 1692e. *Finch v. Slochowsky & Slochowsky, LLP*, No. 19-CV-6273, 2020 WL 5848616, at *4 (E.D.N.Y. Sept. 30, 2020); *Sanchez v. Ehrlich*, No. 16-cv-8677, 2018 WL 2084147, at *5 (S.D.N.Y. Mar. 29, 2018); *Royal v. Duringer L. Grp., PLC*, No. 18-cv-00541, 2019 WL 1242447, at *3 (S.D. Cal. Mar. 18, 2019); *cf. Psaros v. Green Tree Serv., LLC*, Civ. No. 15-4277, 2015 WL 9412922, at *5 (D.N.J. Dec. 21, 2015) (affidavit included with foreclosure action filing that stated incorrect amount owed was actionable). Other courts, however, have limited that principle, holding that attorneys are not liable for representations in client affidavits as to the amount owed. *Deere v. Javitch, Block & Rathbone LLP*, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006); *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996). There is, to that extent, a split in authority.

For my part, I am constrained by three principles to conclude that the Ojos have stated a § 1692e claim against Ehrlich.

First, the Third Circuit's standard for falsity is unforgiving. Put plainly, if an amount demanded is inaccurate (or alleged to be inaccurate), it is actionable. *McLaughlin*, 756 F.3d at 246. Contrary to the rule in some other jurisdictions, I cannot now require a plausible factual allegation that Ehrlich

knew the correct rent amount. *See Deere*, 413 F. Supp. 2d at 891; *Ducrest*, 931 F. Supp. at 462. Although the result may seem harsh, it is a product of the statutory language that renders the FDCPA "a strict liability statute to the extent it imposes liability without proof of an intentional violation" *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011), and "a statement is either true or false," *Jensen v. Pressler & Pressler*, 791 F.3d 413, 420 (3d Cir. 2015).[3]

Second, I must view Ehrlich's representations from the perspective of the least sophisticated consumer. *Jensen*, 791 F.3d at 420–22. From that perspective, a consumer would not be able to understand that the rent demanded was accurate. The filing only contains a conclusory statement that $1,946.88 was the amount owed, and the balance sheet is more confusing than clarifying because it shows a sudden jump in rent for December. The least sophisticated consumer, with no more information than is in the balance sheet, might well be confused as to why they owed that amount or could even perceive that they were facing higher rent because of their nonpayment.[4]

Third, and most crucial, I must accept as true the Ojos' allegations that they did not owe the rent demanded in the summary dispossess action and

---

[3]     As one court explained, this interpretation furthers the statutory purpose:

> [T]he statute places the burden on the debt collector to avoid collecting debt improperly, including attempting to collect debt that is not actually owed. A debt collector's reliance on unverified information from the client, without more, is particularly problematic in the landlord-tenant context, where tenants risk not only damage to their credit, but possible loss of their homes as a result of misstatements of debt owed, and where landlords might profit from evicting tenants who pay below market rent.

*Lee*, 958 F. Supp. 3d at 531 n.2.

[4]     A false statement must also be "material when viewed through the least sophisticated debtor's eyes," meaning "it has the potential to affect the decision-making process of the least sophisticated debtor." *Jensen*, 791 F.3d 421. An inflated amount for the core debt obligation (rent) is material. The Ojos could reasonably have believed, however, that the landlord was escalating the rent to coerce payment of amounts not legitimately owed. Again, however, I address here only the adequacy of the allegations; the actual facts must be developed through discovery.

8

that Milrose increased the rent in response to their complaints. Here, the Complaint is frankly weak; it does not support any calculation of the correct amount due or analyze the landlord's calculation, but merely states that $1,946.88 is too much.

Theoretically, I could resolve the issue based on documents properly considered on a motion to dismiss, but the documents before me are not sufficient for that purpose. The Lease that expired sometime before December 2019 had set the monthly rent at $1,800. (Lease at 2.) The balance sheet attached to the summary dispossess filing shows that, for the prior six months, Milrose had charged the Ojos monthly rent of $1,872. (Filing at 4.) Those documents do not furnish a basis to look behind the Complaint's allegation that Ehrlich's figure of $1,946.88 overstated the rent due.

Because the documents provided are insufficient to establish the correct amount due, and because the Ojos appear *pro se,* I will construe the allegations in their favor and find them sufficient. *Cf. Hopkins v. I.C. Sys., Inc.*, Civ. No. 18-2063, 2020 WL 2557134, at *12 (E.D. Pa. May 20, 2020) (disputes over amount owed under the lease were questions of fact precluding summary judgment). It may be that the defendants have an explanation for the calculation of the figure, but that explanation does not appear on the face of the Complaint or in the documents I may consider on a motion to dismiss.

Such explanations are therefore outside the scope of my current review. Should the amount claimed be correct, that fact should be ascertainable and provable by extrinsic evidence.[5] Taking the allegations of the complaint as true, however, the Ojos have stated an FDCPA claim based on a § 1692e violation.

---

[5]     Alternatively, at the stage of summary judgment or trial, even a bona fide error in calculating the rent might support an affirmative defense to liability, "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). It might also be considered as a factor in fixing the amount of any liability. *See* § 1692(b)(2).

### c. § 1692f

The Ojos allege that Ehrlich violated § 1692f, which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." As with § 1692e, a debt collector violates § 1692f when it attempts to collect amounts not owed. *Kaymark*, 783 F.3d at 175–76; *see also Finch*, 2020 WL 5848616, at *4 (law firm violated § 1692f by bringing housing court action seeking rent which tenant alleged she did not owe). Thus, because the Ojos allege that they did not owe $1,946.88 in rent for December 2019, they have stated a § 1692f claim against Ehrlich.

### d. § 1692g

The Ojos allege that Ehrlich violated § 1692g, which provides that a debt collector must provide the consumer with certain information in a written notice either as the initial communication or "[w]ithin five days after the initial communication." § 1692(a). Section 1692g further provides that if the consumer disputes the debt, certain protections are unlocked. *Riccio*, 954 F.3d at 588–89. In particular, if the consumer disputes the debt in writing within 30 days of receiving the notice, the debt collector must cease collection efforts until verifying the debt with the creditor and providing verification information to the consumer. *Id.*; *see also* § 1692g(b). The Ojos argue that Ehrlich violated § 1692g by (1) failing to send a written notice with the required information, and (2) commencing the summary dispossession action before the 30-day period had expired. (Opp. at 7.)

They are incorrect. Section 1692g is triggered only if there is an "initial communication." *See* § 1692(a) (listing information to be provided in "initial communication" or within five days thereof); *Sebrow v. Fein, Such, Kahn, & Shephard, P.C.*, Civ. No. 10-215, 2010 WL 4553559, at *1 (D.N.J. Nov. 1, 2010) (*Sebrow I*). By statute, however, "a formal pleading in a civil action shall not be treated as an initial communication." § 1692g(d). Accordingly, Ehrlich's summary dispossess filing cannot serve as an "initial communication" that triggered § 1692g's obligations. *Sebrow I*, 2010 WL 4553559, at *1.

The Complaint also alleges that the Ojos had a communication with Ehrlich when they called Ehrlich's offices and spoke with an employee about their case. (Compl. ¶ 27.) The Ojos may be alleging that this phone call was Ehrlich's initial communication with them regarding their debt. Assuming that is the theory, the Complaint fails to allege sufficient facts to support it. A debt collector may comply with § 1692g if it provides the required information during an oral initial communication. *Sebrow v. Fein, Such, Kahn, & Shephard, P.C.*, Civ. No. 10-215, 2011 WL 3439167, at *2 (D.N.J. Aug. 3, 2011) (*Sebrow II*); *see* § 1692(a) ("[A] debt collector shall, *unless* the following information is contained in the initial communication . . . , send the consumer a written notice . . . ." (emphasis added)). The Complaint does not allege that the Ehrlich employee failed to give the required information, *see* § 1692g(a)(1)–(5), so there is no plausible § 1692g violation. *Sebrow II*, 2011 WL 3439167, at *2–3.

Likewise, the Complaint does not allege that the Ojos disputed the debt *in writing* to Ehrlich (or disputed the debt at all), which would trigger the 30-day period when collections must cease. *Riccio*, 954 F.3d at 588–89. As a result, Ehrlich was under no obligation to pause the summary dispossess action.

Accordingly, the Ojos have failed to state a § 1692g claim.

* * *

To recap, the Ojos have stated an FDCPA claim against Ehrlich for violations of §§ 1692e and 1692f. The remaining FDCPA claims will be dismissed.

## B. CLA

The Ojos assert a CLA claim in Count 7. (Compl. ¶¶ 60–64.) The CLA imposes disclosure requirements on "consumer leases." *Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 216 (3d Cir. 2004). A "consumer lease" in pertinent part "means a contract in the form of a lease or bailment for the use of personal property." § 1667(1). "Personal property" does not include "real

property." § 1667(4). Because the Ojos' Lease concerned the use of real, not personal, property, their Lease was not subject to the CLA.

Accordingly, to the extent Count 7 asserts a CLA claim, it will be dismissed.

### C. State-Law Claims

Moving to the state-law claims, I address some preliminary matters (Section III.C.1), before proceeding to the merits (Section III.C.2–7).

#### 1. Preliminary Matters

##### a. *Supplemental jurisdiction*

The Court is always obligated to examine its own subject matter jurisdiction. As noted above, the parties are not alleged to be of diverse citizenship, so diversity jurisdiction does not attach. *See* 28 U.S.C. § 1332(a). I have found, however, that the Complaint states a federal FDCPA claim against Ehrlich. A federal cause of action, of course, gives rise to federal-question jurisdiction. 28 U.S.C. 1331. Where federal question jurisdiction exists, a federal court may assert supplemental jurisdiction over associated state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

The Ojos' state claims arise from the same landlord-tenant dispute and litigation that underlie the federal FDCPA claim. But if I may put it this way, the federal claim, on which this court's jurisdiction depends, is hanging by a thread. The § 1692e and § 1692f theories are not very clearly alleged and frankly have benefited from the leeway given to *pro se* pleadings. *See* discussion *supra*.

The federal FDCPA claim, moreover, applies only to Ehrlich; Milrose, which is alleged to be the primary wrongdoer, is not liable under the FDCPA. The state claims are the other way around; looking ahead, I find Milrose potentially liable for the state claims, but have dismissed them against Ehrlich. Thus, as to Ehrlich, this is a pure federal-law case, but as to Milrose it is a

12

pure state-law case. Now it is true that supplemental jurisdiction "shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Still, the connection between the federal and state claims is weakened by the lack of overlap in parties.

So, without prejudging the matter, I caution these *pro se* plaintiffs that if the federal claim should prove to be unsupported, the Court may be constrained to dismiss the state claims as well. *See* 28 U.S.C. § 1367(c).

### b. *Rooker-Feldman*

This Court is not empowered to hear appeals from state court judgments. The existence of a prior, completed state-court action thus implicates the *Rooker-Feldman* doctrine, under which "federal district courts are not amenable to appeals from disappointed state court litigants." *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 458 (3d Cir. 2019). At the outset, I must assure myself that *Rooker-Feldman* does not apply before exercising jurisdiction over the case. *See Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010). The doctrine applies to "[1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Malhan*, 938 F.3d at 458 (citation omitted).

The first and third elements are arguably met because the Ojos commenced this litigation two days after they voluntarily dismissed the landlord-tenant case. *See id.* at 459 (*Rooker-Feldman* applies when "the state action has reached a point where neither party seeks further action" including a "voluntary termination" (citation omitted)).

The second and fourth elements are not met, however. Taking to heart the Third Circuit's admonition that the doctrine be applied narrowly, I observe that this federal action is not attacking or seeking to reverse the state-court judgment as such. *See Great W. Mining*, 615 F.3d at 167. Rather, the Complaint largely seeks compensatory damages based on Milrose's *actions*

13

(primarily, its failure to maintain the premises). Thus, *Rooker-Feldman* does not deprive me of jurisdiction.

### c. Entire Controversy Doctrine

Milrose and Ehrlich argue that the Ojos had an opportunity to seek "a rent abatement or any such relief from the alleged conditions of their tenancy" in the landlord-tenant action, but "[b]y failing to appear, their right to seek an abatement of rent from Defendant Milrose was effectively waived." (Mot. at 11–12.) This might be taken as an argument (or perhaps the reservation of an argument) that the dismissal of the landlord-tenant action has preclusive effect. This argument fails, at least at the motion to dismiss stage, for two reasons.

First, it is not adequately raised. Preclusion, which for New Jersey judgments is most broadly applied under the entire controversy doctrine, is an affirmative defense. *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). As such, it must be raised a way that "gives fair notice of that defense." *In re Frescati Shipping Co.*, 886 F.3d 291, 313 (3d Cir. 2018), *aff'd sub nom. CITGO Asphalt Refining Co. v. Frescati Shipping Co.*, 140 S. Ct. 1081 (2020). Milrose and Ehrlich cite no legal basis for their argument, and do not cite any claim preclusion doctrine specifically. *See id.* (defense not adequately raised when there was no "specific citation to the . . . defense or even a description of the nature of the defense"). Moreover, there is a particular danger that the Ojos would be prejudiced if I dismissed based on the defense. To begin with, they appear *pro se*, heightening the need for defendants to identify their defenses and articulate them clearly. And of course, because the preclusion doctrines are affirmative defenses, they must be applied cautiously at the motion-to-dismiss stage, and based on the face of the complaint itself. *See Rycoline*, 109 F.3d at 886 (holding that if affirmative defense "is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)"). That is not the case here.

Second, and regardless, the entire controversy doctrine's application here is doubtful. True, the doctrine is "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016) (en banc) (citation omitted). But the doctrine's "preclusive effect is limited to claims that *could* have been brought in the prior action." *Smith v. Hillside Village*, 279 F. Supp. 3d 537, 547 (D.N.J. 2017). Under the New Jersey court rules, the Ojos were prevented from raising most counterclaims in the course of defending a summary dispossess proceeding. *Id.* (citing N.J. Ct. R. 6:3-4). Although a tenant may raise a habitability defense, *Daud v. Mohammad*, 952 A.2d 1091, 1092 (N.J. Super. Ct. App. Div. 2008), there is support for the proposition that, given the restricted nature of such proceedings, they have no preclusive effect, *C. F. Seabrook Co. v. Beck*, 417 A.2d 89, 96 (N.J. Super. Ct. App. Div. 1980); *see Berzito v. Gambino*, 308 A.2d 17, 22 (N.J. 1973) (allowing tenants to seek rent paid prior to court's ruling in summary dispossess action that the landlord had breached the warranty of habitability). At any rate, the allegations here appear to exceed the bounds of abatement of rent; the Ojos seek compensatory damages in an amount of not less than $500,000.

At the very least, then, the applicability of the entire controversy doctrine or other preclusion doctrines cannot be conclusively determined from the face of the Complaint. I therefore deny the motion to dismiss on those grounds, and turn to the substance of the state-law claims.

### 2. Breach of Contract

The Ojos assert breach of contract claims in Counts 1 and 4. (Compl. ¶¶ 32–35, 49.) The contract in question is the Lease.

At the outset, the claims fail against Ehrlich because Ehrlich is not a party to the Lease. *Aronsohn v. Mandara*, 484 A.2d 675, 680 (N.J. 1984). Ehrlich possessed no obligations under the Lease, and therefore could not have breached them. As to Ehrlich, then, Counts 1 and 4 are dismissed.

15

Turning to Milrose, the Ojos must establish "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Mid-Atl. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020) (citation omitted). The first element is not disputed. The Ojos and Milrose had a written lease that ran through at least November 30, 2018. (Lease at 2.) The Ojos continued to live in the apartment, and they paid rent until December 2019. It is not clear that the Lease had been renewed at that point, but if not, there is at least an inference to be drawn of a month-to-month tenancy. *See* N.J. Stat. Ann. § 46:8-10. Under a month-to-month tenancy, the parties' obligations to one another as stated in the Lease would have continued. *J.M.J. N.J. Props., Inc. v. Khuzam*, 839 A.2d 102, 107 (N.J. Super. Ct. App. Div. 2004). Thus, the parties had a valid contract imposing mutual obligations throughout the relevant period.

Next, the Ojos allege that Milrose breached the Lease/contract by failing to fulfil its obligations to maintain the premises and make repairs. (Compl. ¶ 33.) At this stage, it is not necessary to analyze the particulars of this Lease. Residential leases in New Jersey are deemed to contain "an implied covenant of habitability" that obligates the landlord to maintain the premises. *Dowler v. Boczkowski*, 691 A.2d 314, 319 (N.J. 1997). That obligation survives and continues through a month-to-month tenancy. *See J.M.J.*, 839 A.2d at 107.

The Complaint alleges facts, such as a bed bug infestation, that would plausibly support an inference that Milrose did not fulfil its obligations. (Compl. ¶ 18.) At a minimum, then, the Ojos have alleged a breach of the implied covenant of habitability. The motion to dismiss Counts 1 and 4, as against Milrose only, is denied.

### 3. Wrongful Ouster

The Ojos assert a claim (Count 2) that they were "wrongfully ousted" from the apartment. (Compl. ¶ 38.) (Similar language also appears in Count 1, but I deal with it here, where it stands alone.) The precise legal basis for this

claim is unclear. There is no cause of action for "wrongful ouster" *per se* in New Jersey. The likely explanation is that New Jersey is an anti-eviction state, which provides protections greater than those of tort law. By statute, a landlord *cannot* evict a tenant without showing good cause to a court in a summary dispossess action and obtaining a judgment of possession. *147 Broadway Corp. v. Robinson*, 2008 WL 2663751, at \*2 (N.J. Super. Ct. App. Div. July 9, 2008) (per curiam) (citations omitted), *Hale v. Farrakhan*, 915 A.2d 581, 584 (N.J. Super. Ct. App. Div. 2007); N.J. Stat. Ann. § 2A:39-1. Here, the landlord brought such an action and the Ojos obtained dismissal of it by paying the rent and vacating the apartment.

There is, however, one potentially applicable cause of action.[6] A tenant may sue a landlord for instituting a summary dispossess action "[a]s a reprisal for the tenant's efforts to secure or enforce any rights under the lease or contract, or under the laws of the State of New Jersey." N.J. Stat. Ann. § 2A:42-10.10(a). The Complaint alleges that Milrose brought the summary dispossess action to "retaliate" against the Ojos for complaining about the state of the premises. (Compl. ¶¶ 24–25, 38.) Accordingly, the Ojos have pleaded a claim that the summary dispossess action was brought in reprisal for their efforts to enforce their right to habitability.

To be sure, the landlord has its own story to tell, in that the summary dispossess action followed nonpayment of rent. Still, retaliation may be found even if "other factors may also be present or even dominant." *Les Gertrude Assocs. v. Walko*, 621 A.2d 522, 525 (N.J. Super. Ct. App. Div. 1993) (citation omitted). At the pleading stage, I can infer that the Ojos' complaints were one

---

[6]     Other possible causes of action do not fit the allegations here. One applies when a landlord displaces tenants based on a false representation that the property is required for the landlord's own use. N.J. Stat. Ann. § 2A:18-61.6. Another cause of action is for unlawful detainer, where a landlord enters and occupies a property without obtaining a judgment of possession. *Id.* §§ 2A:39-1, 2A:39-8; *Levin v. Lynn*, 708 A.2d 454, 457–58 (N.J. Super. Ct. App. Div. 1998).

motivating factor. Thus, the Complaint states a § 2A:42-10.10(a) claim in Count 2 against Milrose.

Ehrlich, however, was not the Ojos' landlord. Setting aside mere legal conclusions, the factual allegations of the Complaint set forth only that Ehrlich acted as Milrose's attorney in the landlord-tenant case. To the extent Count 2 is asserted against Ehrlich, it will be dismissed.

### 4. Negligence

The Ojos assert a claim (Count 3) that Milrose was negligent in maintaining the premises. (Compl. ¶ 45.) "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Shields v. Ramslee Motors*, 223 A.3d 172, 176 (N.J. 2020) (citation omitted). A landlord has a duty to "maintain the premises in a reasonably safe condition for the use and enjoyment of tenants and their guests. Such maintenance includes . . . attentive repair work." *Anderson v. Sammy Redd & Assocs.*, 650 A.2d 376, 378 (N.J. Super. Ct. App. Div. 1994). The Ojos plausibly allege that Milrose breached that duty by failing to repair the premises after repeated complaints. *See Dwyer v. Skyline Apartments, Inc.*, 301 A.2d 463, 465 (N.J. Super. Ct. App. Div. 1973) (failure to repair after notice is a breach). They allege injury, proximate cause, and damages because their furniture and clothing were "damaged and destroyed" (from bed bugs, I can infer), they were otherwise deprived of the full enjoyment of their property (Compl. ¶ 29), and they suffered other forms of property damage and emotional distress (*id.*; *see also* Prayer for Relief). Accordingly, the Ojos have stated a negligence claim against Milrose, and as to Milrose, the motion to dismiss is denied.

Ehrlich, however, was not the Ojos' landlord, and had no duty to maintain the premises. To the extent to the negligence claim (Count 3) is asserted against Ehrlich, it will be dismissed.

### 5. NJCFA

Count 6 contains, in addition to the FDCPA claim, a claim under the New Jersey Consumer Fraud Act. (Compl. ¶ 58.)

The NJCFA "provides a remedy for any consumer who has suffered an ascertainable loss of moneys or property as a result of an unlawful commercial practice." *Heyert v. Taddese*, 70 A.3d 680, 694 (N.J. Super. Ct. App. Div. 2013). The NJCFA applies to landlords of large buildings. *Id.* at 695. "The NJCFA requires a plaintiff to prove three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.* --- F. Supp. 3d ----, ----, Civ. No. 15-3103, 2020 WL 5743072, at *17 (D.N.J. Sept. 25, 2020) (quotation marks and citation omitted).

The first, unlawful-conduct element is not met by, for example, an ordinary breach of contract or warranty. *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (simple breach of contract or warranty will not support NJCFA claim). Nor has the CFA been permitted to subsume ordinary landlord-tenant disputes; "the Consumer Fraud Act will only apply to extreme conduct of landlords." *49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.*, 547 A.2d 1134, 1144 (N.J. Super. Ct. App. Div. 1988). Applying those principles, I find that the first element is inadequately pleaded. For example, there is no allegation that the landlord imposed charges not permitted by law. *See Heyert*, 70 A.3d at 696 (charging rent above rent ordinance's limits was unlawful practice). Nor is there any allegation that the landlord illegally withheld services in order to drive the tenants from the building. *49 Prospect*, 547 A.2d at 1142 (landlord's failure to maintain apartment building in effort to induce tenants to move out was unlawful practice).

The third, ascertainable-loss element is also lacking. For a NJCFA claim, generalized allegations of compensable damages do not suffice. "At the pleading stage, plaintiffs must provide a reasonable valuation that quantifies the

difference in value between the promised product and the actual product received." *Matrix Distribs. v. Nat'l Ass'n of Bds. of Pharm.*, Civ. No. 18-17462, 2020 WL 7090688, at *18 (D.N.J. Dec. 4, 2020) (quotation marks, alteration, and citation omitted), *appeal docketed,* No. 20-3638 (3d Cir. Dec. 31, 2020). For habitability-type claims, this can mean a calculation of the diminution in value of the apartment, damages for time lost in the apartment, and costs of ameliorative efforts. *49 Prospect*, 547 A.2d at 1140; *Harmon v. Biltmore Realty Co., LLC*, No. A-2186-16T2, 2018 WL 5091900, at *6 (N.J. Super. Ct. App. Div. Oct. 19, 2018) (per curiam). The Complaint attempts no such estimate. Rather, the Complaint broadly seeks "economic damages" and damages for "emotional trauma" to the tune of at least $500,000. (Compl. ¶¶ 59, Prayer (G).) For purposes of the NJCFA, that does not meet the standard of an "ascertainable loss."

Accordingly, the NJCFA claim contained in Count 6 will be dismissed.

### 6. Conspiracy

The Ojos assert a claim (Count 5) that Milrose and Ehrlich conspired to levy additional rent charges and file the retaliatory summary dispossess action. (Compl. ¶¶ 51–53.) A civil conspiracy is "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1029–30 (N.J. 2009). The conspiracy claim fails for two reasons.

First, New Jersey has not recognized a conspiracy claim between a law firm and its corporate client. A corporation cannot conspire with its agents. *Tynan v. Gen. Motors Corp.*, 591 A.2d 1024, 1032 (N.J. Super. Ct. App. Div. 1991), *rev'd in part on other grounds*, 604 A.2d 99 (N.J. 1992); *see also, e.g.*, *Carifi v. Barberio*, No. A-0597-17T1, 2020 WL 7330081, at *18 (N.J. Super. Ct. App. Div. Dec. 14, 2020); *Marrin v. Capital Health Sys.*, Civ. No. 14-2558, 2015 WL 404783, at *10 (D.N.J. Jan. 29, 2015). An attorney acts as an agent for his

or her client. *Cohen v. Southbridge*, 848 A.2d 781, 784 (N.J. Super. Ct. App. Div. 2004). It stands to reason, then, that an attorney's mere representation of his or her client in litigation does not amount to a conspiracy. *Sun Pharms. Indus., Inc. v. Core Tech Sols., Inc.*, Civ. No. A-0646-11T4, 2013 WL 1942619, at *20 (N.J. Super. Ct. App. Div. May 13, 2013) (per curiam); *see Heffnan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999) (recognizing this principle under federal law); Am. Law Inst., Restatement (Third) of Torts: Liab. for Econ. Harm § 27 cmt. d (2020) (recognizing this principle under general tort law). Indeed, the Ojos point to no New Jersey case recognizing a law firm/corporate client conspiracy, and I could locate none.[7] I decline to recognize their novel theory. *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002) ("[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent.").

Second, even setting aside that legal infirmity, the Complaint does not plausibly allege a conspiratorial agreement. Conspirators must "understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do [their] part to further them." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (citation omitted). The Complaint only alleges in conclusory fashion that Milrose and Ehrlich "conspired" together. (Compl. ¶ 24.) There are no facts indicating an agreement to do something wrongful—

---

[7]     Indeed, a corporate body, unlike a natural person, can *only* appear in court by counsel. *See* N.J. Ct. R. 1:21-1(c) ("[A]n entity, however formed and for whatever purpose, other than a sole proprietorship shall neither appear nor file any paper in any action in any court of this State except through an attorney authorized to practice in this State."); *see generally* 19 C.J.S. Corporations § 785. That legal reality severely undercuts the plausibility of any inference that, merely by hiring counsel, the corporation enlisted a co-conspirator in its scheme. The Ojos' theory here, taken to its logical conclusion, would entail a self-proving conspiracy every time a corporation's position in litigation was found to be wrongful. Compare *Banco Popular North America v. Gandi*, in which the New Jersey Supreme Court, based on various facts, recognized a conspiracy between an individual and his lawyer. 876 A.2d 253, 263 (N.J. 2005). As the Appellate Division explained, in *Banco*, "lawyers were alleged to have engaged in civil conspiracies with their individual clients; they were not acting on behalf of a corporation as its employee or agent." *Sun Pharms.*, 2013 WL 1942619, at *20.

21

only an agreement by Ehrlich to represent Milrose in litigation based on rent which had not been paid. True, Ehrlich's pleading allegedly asked for rent that exceeded the amount due. *See* Section III.A, *supra.* But that is a far cry from an agreement to cause harm. *See Banco*, 876 A.2d at 263.

For these reasons, the conspiracy claim (Count 5) will be dismissed.

### 7. NJTIRA

The Ojos assert an NJTIRA claim in Count 7, alleging that Milrose failed to disclose that the property was infested. (Compl. ¶ 63.) The NJTIRA, however, only requires that landlords provide tenants a statement prepared by the Department of Community Affairs regarding tenant rights under New Jersey law. N.J. Stat. Ann. §§ 46:8-45, 46:8-46; *see also* Dep't of Cmty. Affairs, *Truth In Renting: A guide to the rights and responsibilities of residential tenants and landlords in New Jersey*, https://www.nj.gov/dca/divisions/codes/publications/pdf_lti/t_i_r.pdf. Thus, there is no NJTIRA violation for failing to disclose information apart from that required by the DCA statement.

Thus, the motion to dismiss the Count 7 NJTIRA claim is granted.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is granted in part and denied in part. Counts 5 (conspiracy) and 7 (CLA, NJTIRA) are dismissed in their entirety. Counts 1–4 (breach of contract, wrongful ouster, negligence, refusal to repair) are dismissed insofar as those Counts are asserted against Ehrlich. Count 6, to the extent it asserts an FDCPA claim against Milrose, is dismissed. Count 6, to the extent it asserts an NJCFA claim against both defendants, is dismissed. The motion is otherwise denied.

A separate order will issue.

Dated: March 4, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**